D. Brian Hufford
Robert J. Axelrod
Susan J. Weiswasser
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
100 Park Avenue
New York, NY 10017
212.661.1100

John W. Leardi
Vincent N. Buttaci
Paul D. Werner
BUTTACI & LEARDI, LLC
103 Carnegie Center, Suite 101
Princeton, NJ 08540
609.799.5150

Patrick V. Dahlstrom
Leigh Handelman Smollar
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
312.377.1181

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRI3 ENTERPRISES, LLC, individually, and on behalf of all others similarly situated, *Plaintiff,* v. AETNA, INC., AETNA HEALTH INC., AETNA LIFE INSURANCE COMPANY, CORPORATE HEALTH INSURANCE, INC., and AETNA INSURANCE COMPANY OF CONNECTICUT, *Defendants.* | Case No.: _____ **CLASS ACTION COMPLAINT** |

Plaintiff Tri3 Enterprises, LLC ("Tri3" or "Plaintiff"), to the best of its knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances, for its Class Action Complaint (the "Complaint"),

asserts the following against Defendants Aetna, Inc., Aetna Health Inc., Aetna Life Insurance Company, Corporate

Health Insurance Company, and Aetna Insurance Company of Connecticut (collectively "Aetna"):

## INTRODUCTION

1.     Plaintiff Tri3, individually and on behalf of all other similarly situated health care providers, hereby challenges the conduct of Aetna, as violative of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA").

2.     Defendant Aetna offers, underwrites, and administers commercial health plans ("Plan" or "Plans"), through which health care expenses incurred by Plan participants ("Aetna Insureds") for services and/or supplies covered by the Plans ("Covered Services") are reimbursed by and/or through Aetna, subject to the Plan's terms, conditions, and limitations.

3.     Plaintiff and the members of the Putative Class, as defined below, are health care providers ("Providers") who have provided health care services and/or supplies to Aetna Insureds and who have been paid by Aetna directly for providing such services or supplies through the issuance of benefits under the terms, conditions, and limitations of Aetna's Plans. In so doing, Aetna first determined that the treatments in question were, in fact, Covered Services under the terms and conditions of each Aetna Insured's respective Plan.

4.     The vast majority of the Aetna Insureds on whose behalf Plaintiff and the members of the Putative Class and submitted claims and were paid benefits, were covered by Plans offered, underwritten, or administered by Aetna as part of a private employee welfare benefit plan governed by ERISA. ERISA governs all such private employee welfare benefit plans, whether they are fully-insured or self-funded, and is estimated to include more than 170 million insureds nationwide. ERISA-exempt plans include those sponsored by governmental agencies or churches, or for plans acquired by individuals, and not through an employer.

5.     Because the benefit payments to Plaintiff and the members of the Putative Class were based on Aetna's evaluation and assessment of the terms and conditions of ERISA Plans, ERISA governs the adjudication and disposition of these benefit payments. Further, because

Aetna paid Plan benefits directly to Plaintiff and the members of the Putative Class as assignees under benefit assignments received from Aetna Insureds, Plaintiff and the members of the Putative Class are deemed to be Plan beneficiaries under ERISA, with standing to assert rights and protections under this statute.

6.      Aetna established and maintains a Special Investigations Unit ("Aetna's SIU") to detect, investigate, and prevent false or fraudulent insurance claims. The primary means by which Aetna's SIU identifies false or fraudulent insurance claims is Post Payment Audits. A "Post Payment Audit" is a retrospective review of previously paid insurance benefits to evaluate whether payments for Covered Services were properly made to Aetna Insureds or their assignee Providers. The overwhelming majority (approximately 80%) of Aetna's Post Payment Audits are Provider-directed, meaning that the claims reviewed are submitted by and paid to Providers. In selecting which Providers to retroactively audit, Aetna relies upon a variety of complex statistical analyses and data-mining to identify Providers or practices that exhibit potentially problematic or non-traditional billing patterns ("Provider Profiling").

7.      After paying benefits on behalf of Aetna Insureds to Plaintiff and other members of the Putative Class for a substantial period of time and repeatedly having determined the services and supplies in issue were Covered Services, Aetna conducted Post-Payment Audits of certain benefit payments made to Plaintiff and other members of the Putative Class and subsequently determined that it had erroneously made overpayments with respect to the services and supplies it reviewed, thereafter demanding repayment.

8.      ERISA establishes strict rules and procedures with which Aetna or other entities that administer ERISA plans must comply. Among other things, ERISA sets forth specific steps that must be followed when an insurer such as Aetna makes an "adverse benefit determination" by denying or reducing benefits, including by providing a "full and fair review" of the decision.

By making a retroactive determination that a previously paid benefit was, in fact, paid improperly, an insurer makes an adverse benefit determination under ERISA, and any effort to recover previously paid benefits issued under ERISA plans must follow the strict procedural guidelines imposed by the claims procedure regulations promulgated under ERISA, and is limited in scope to such equitable remedies that are available under ERISA. As detailed herein, Aetna violated ERISA by making retroactive adverse benefit determinations without first complying with the claims procedures required under ERISA and by requesting repayments that exceeded the scope of available equitable remedies under ERISA.

9. Aetna further violated ERISA by and through the various steps it took to coerce Plaintiff and members of the Putative Class to return the alleged overpayments, including through its use of "Pre-Payment Review." Pre-Payment Review is a process by which Aetna requires Providers from whom it seeks to recover so-called overpayments to submit supporting documentation for all claims submitted, purportedly so it can review the corresponding records before adjudicating each claim for benefits. In reality, however, Pre-Payment Review is a coercive negotiating tactic through which Aetna shuts off all benefit payments to an affected Provider by uniformly denying all claims subjected to review, regardless of their legitimacy, and failing to provide the disclosures and appeal rights required under ERISA.

## THE PARTIES

10. Plaintiff Tri3 is an Illinois limited liability company with a principal place of business at 415 West Golf Road, Suite 5, Arlington Heights, Illinois 60005, which has provided durable medical equipment ("DME") to many Aetna Insureds through its wholly-owned and controlled subsidiary companies, Wabash Medical Company, LLC ("Wabash"), located at 7750 Zionsville Road, Suite 850, Indianapolis, Indiana 48268, Motion Medical Technologies, LLC

("Motion"), located at 950 N. Rand Road, Suite 121,Wauconda, Illinois 60084, and Orthoplex

Inc. ("Orthoplex"), located at 3717 N. Ravenswood Avenue, Suite 217, Chicago, Illinois 60613.

11.     As a DME provider, Tri3, through Wabash, Motion, and Orthoflex, has its

patients execute assignments, as a matter of course, which generally state:

> Assignment of Insurance Benefits: I certify that the information given by me is correct. I request that payment of authorized benefits be made on my behalf. I assign the benefits payable for covered services rendered by Tri3 to Tri3 and authorize Tri3 to submit claims to . . . commercial insurance carriers for payment. I authorize payment of my insurance benefits directly to Tri3, which payment will not exceed the balance due on my account. I hereby guarantee payment to Tri3 of any and all charges not covered by this assignment, and waive any and all notices and demands in the event of non-payment thereunder. . . . By signing I hereby appoint Tri3 Enterprises, LLC or its affiliates to act on my behalf in connection with any claim for coverage of benefits under my health plan. This includes appealing a claim for benefits that has been denied (either in whole or in part). This appointment authorizes my representative to receive any and all information provided to me, and to act for me (or my covered spouse or dependent child), if named above as patient. This appointment also authorizes my representative to provide any requested information to the plan that relates to any claim [for] coverage or benefits under the plan.

This assignment establishes Tri3's legal standing to pursue the ERISA claims asserted herein as

an authorized representative of each of Aetna Insureds whose care is in issue.

6.     Defendant Aetna, through its parent corporation, Aetna, Inc., or one of its wholly-

owned and controlled subsidiaries, offers, insures, underwrites, and administers commercial

health benefits, including those of the Aetna Insureds for whom the Plaintiff and the members of

the Putative Class have provided health care services, as detailed herein.

7.     "Aetna" is a brand name used for products and services provided by one or more

of the Aetna group of subsidiaries that offer, underwrite, or administer benefits.  When used in

this Complaint, "Aetna" includes all Aetna subsidiaries owned and controlled by any of the

named Defendants whose activities are interrelated and intertwined with them.

8.     Due to the manner in which Aetna functions with respect to its Plans, including

seeking to enforce the terms of those Plans in making adverse benefit determinations and pursuing so-called overpayments, it serves as a functional ERISA fiduciary and, as such, must comply with fiduciary standards. Moreover, in making coverage determinations relating to its Aetna Insureds, Aetna must comply with the terms and conditions of the applicable Plans and otherwise must comply with ERISA and its underlying regulations.

## SUMMARY OF LEGAL CLAIMS

9.      Aetna's various retroactive overpayment recoupments from Providers, including Tri3, constitute actions for equitable relief under ERISA, and must therefore comply with ERISA's rules and regulations. Further, Aetna's determination that the original submitted claim should not have been paid in full, thereby leading to the so-called overpayment, constituted an "Adverse Benefit Determination" under ERISA, which is defined as follows:

> The term "adverse benefit determination" means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4).

10.     Similarly, whenever Aetna elects to withhold benefits on an otherwise valid claim as part and parcel of Pre-Payment Review, this also constitutes an Adverse Benefit Determination under ERISA, subjecting Aetna to ERISA's rules and regulations.

11.     At a minimum, in making its retroactive Adverse Benefit Determinations, Aetna is required to issue revised explanation of benefits statements ("EOBs") to the Aetna Insureds whose benefits are at issue, with adequate disclosure of proper procedures for appealing such

Adverse Benefit Determinations. It is further required to provide, upon request of the Aetna Insureds or its authorized representatives, including Providers with a valid assignment like Tri3, copies of all relevant plan materials, including summary plan descriptions ("SPDs"), relating to its Adverse Benefit Determination, and to offer the "full and fair review" of the decision mandated by ERISA. Aetna failed to do so, and, in so doing, violated ERISA.

## JURISDICTION AND VENUE

12.     Plaintiff asserts subject matter jurisdiction for its ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 1132(e) (ERISA).

13.     Venue is appropriate in this District for Plaintiff's claims under 28 U.S.C. § 1391, and 29 U.S.C. § 1132(e)(2), because Plaintiff is based and transacts business here.

## PLAINTIFF TRI3'S EXPERIENCE
## EXPERIENCE WITH AETNA HEALTH PLANS

14.     Tri3, operating through Wabash, Motion, and Orthoflex, is a DME Provider, whereby it provides DME to Aetna Insureds who come to it after having been prescribed such equipment by its treating health care providers. Upon providing such supplies to Aetna Insureds, Tri3, through Wabash, Motion, and/or Orthoflex, files claims with Aetna for reimbursement pursuant to the terms and conditions of the underlying health care plans of the patients. Aetna then pays the applicable benefits directly to Tri3, Wabash, Motion, or Orthoflex, pursuant to assignments they have obtained from the Aetna Insureds.

15.     On or about September 10, 2009, in response to a request for information from Aetna, Tri3, on behalf of Wabash, provided coding information to Aetna clarifying its reporting of Healthcare Common Procedure Coding System ("HCPCS") E0650 for rental dispensation by Wabash of the Game Ready® Vasopneumatic Compression Device to Aetna Insureds. Among the items provided to Aetna as part and parcel of this correspondence were: (1) the coding

definition of HCPCS E0650, and an explanation as to how the Game Ready® Vasopneumatic Compression Device satisfies that definition; (2) the 510(k) pre-market clearance issued by the Food and Drug Administration ("FDA") confirming that the Game Ready® Vasopneumatic Compression Device provides non-segmental pneumatic compression; (3) a local coverage determination ("LCD") describing coding guidelines for pneumatic compression devices from National Governmental Services ("NGS"), a subsidiary of WellPoint, Inc., responsible for administering Medicare benefits; and (4) a letter from a board-certified orthopedic surgeon attesting to the Game Ready® Vasopneumatic Compression Device satisfying the definition of HCPCS E0650 by providing non-segmental pneumatic compression.

16.     Nevertheless, on or about October 9, 2009, Sandra L. Petrella ("Ms. Petrella") an "Investigator" with Aetna's SIU sent a letter to Wabash purporting to identify "a discrepancy that may have resulted in an overpayment to [Wabash] by Aetna." In the 10/9/09 letter, Ms. Petrella took issue with Wabash's claim submissions to it with respect to the Game Ready® Vasopneumatic Compression Device, which reduces pain, muscle spasms, tissue damage, and swelling, and helps accelerate the healing process relative to surgical and/or injury sites by simultaneously delivering cyclical compression and temperature-controlled cold therapy. Specifically, Ms. Petrella opined that Wabash should have billed the Game Ready® Vasopneumatic Compression Device using HCPCS E1399 (durable medical equipment, miscellaneous) rather than HCPSC E0650 (pneumatic compressor, non-segmental home model). Moreover, Ms. Petrella stated that *all* pneumatic compression devices were not Covered Services under the terms, and conditions of Aetna's Plans and thus were not eligible for payment. While no specific overpayment or refund was demanded in Ms. Petrella's 10/9/09 letter to Wabash, she did articulate that Wabash would now be subject to Pre-Payment Review.

17.     On or about October 12, 2009, Wabash responded to Ms. Petrella's 10/9/09 letter,

noting Ms. Petrella's obvious refusal to consider the coding reference materials provided by Wabash in its 9/10/09 letter, as well as her misstatement that HCPSC E0650 should only be used to report lymphedema pumps despite its clear and unambiguous definition as encompassing all non-segmental pneumatic compressors. Further, Wabash cited to two Indiana statutes that it felt at the time limited Aetna's ability to retroactively challenge its code selection.

18.     On or about November 11, 2009, Ms. Petrella again wrote to Wabash, this time stating that "Aetna doesn't cover the [Game Ready® Vasopneumatic Compression Device] regardless of the code billed." Additionally, Ms. Petrella also informed Wabash that its billing of the NanoTherm$^{TM}$ device, an FDA-cleared intermittent, external pneumatic compression device that aids in the reduction and control of edema including lymphedema of the upper and lower extremities and venous stasis ulcers, under HCPCS E0651, resulted in an overpayment because "it is not a covered device" under the terms and conditions of Aetna's Plans. As such, Ms. Petrella claimed to have identified an "overpayment" by Aetna to Wabash of $647,327.49 and demanded repayment. Notably, the only review or appeal mechanism mentioned by Ms. Petrella was for Wabash to provide Aetna with the basis for any "disagreement or dispute" and/or to "discuss these findings" in order to "reach an agreement concerning the overpayments."

19.     On or about November 16, 2009, Tri3, on behalf of Wabash, responded to Aetna's refund demand, again reiterating its position with respect to appropriate code usage. Wabash also cited to numerous cases recognizing the common-law voluntary payment doctrine whereby an innocent provider cannot be held responsible for claims submitted in good faith to an insurance carrier who mistakenly processes said claims for payment. As such, Tri3, on behalf of Wabash, refused to remit payment of Aetna's so-called overpayment demand.

20.     On or about February 26, 2010, Wabash received correspondence on behalf of Aetna from Barbara Tancredi ("Ms. Tancredi") an attorney located in Plymouth Meeting

purporting to specialize in "representing Special Investigations Units." In her 2/26/10 letter, Ms. Tancredi reiterated Aetna's position with respect to Wabash's billing of the Game Ready® Vasopneumatic Compression Device under HCPCS E0650 and the NanoTherm[TM] device under HCPCS E6051, respectively. Ms. Tancredi claimed that Aetna was entitled to recover said "overpayments" under "Indiana Insurance code Section 27-8-5.7-10," albeit conceding that under the statute, Aetna's recovery would be limited to payments made during the preceding two-years, thus reducing Aetna's original demand from $647,327.49 to $487,145. Ms. Tancredi also referenced various coverage policies of other third-party payers, including Medicare, all of which were irrelevant, and even went so far as to explicitly accuse Wabash of violating the "Medicare False Claims Act," presumably referring to the Federal False Claims Act, 31 U.S.C. §§ 3729-3733. Ms. Tancredi also offered Wabash virtually no review or appeal rights, merely mentioning that "Aetna remains open to an amicable settlement of the overpayment" and that "[f]or the sake of settlement discussions" Aetna would accept $487,145.

21.     On or about May 13, 2010, in response to another letter of objection from Tri3's counsel, Lisa Smith ("Ms. Smith"), Ms. Tancredi again reiterated Aetna's position that it was entitled to recover overpayments from Tri3 under Indiana law, regardless of whether or not the underlying code selection was appropriate. Ms. Tancredi also amazingly conceded that all supportive documentation provided to Aetna by Wabash *prior* to Aetna's adjudication and payment of the claims in issue, including information disclosing Wabash's reporting of Game Ready® Vasopneumatic Compression Device under HCPCS E0650 and the NanoTherm[TM] device under HCPCS E6051, respectively, was never reviewed by Aetna.

22.     On or about June 16, 2010, Ms. Tancredi sent yet another letter "clarifying" Aetna's position in response to information provided by Ms. Smith that Aetna had, in fact, requested and been provided additional information, including medical records, for many of the

claims in issue, which had been initially denied by Aetna but later reprocessed and paid upon Wabash's submittal of said information. Incredibly, Ms. Tancredi again states that this additional information, though requested by Aetna, was never subjected to "clinical review" and suggests that the claims were "reprocessed without clinical review." Ms. Tancredi also again regurgitated Aetna's position that that it was entitled to recover overpayments from Tri3 under Indiana law while again accusing Wabash of violating the so-called "Medicare False Claims Act."

23.     On or about August 3, 2010, Ms. Smith provided yet another comprehensive objection to Aetna's overpayment demand, again demonstrating the absurdity of Ms. Tancredi's and/or Aetna's stated position with respect to HCPCS code selection for the claims in issue. Moreover, Ms. Smith reiterated that Wabash had submitted properly-coded claims to Aetna along with supporting documentation, and that even assuming arguendo that the devices in issue were not "covered" by Aetna's Plans, the failure to properly adjudicate the claims in issue lies with Aetna. As such, Wabash again objected to the entirety of Aetna's refund demand.

24.     On or about August 9, 2010, Ms. Tancredi forwarded email correspondence to Ms. Smith wherein she summarily rejected all arguments advanced by Ms. Smith on behalf of Wabash in her 8/3/10 letter as having been "addressed by Aetna previously" and stating that "Aetna continues to maintain its right to recover under the Indiana overpayment recovery statute and the common law."  As such, Ms. Tancredi again pressed for a "settlement."

25.     On or about August 13, 2010, Ms. Tancredi forwarded email correspondence to Ms. Smith wherein she again confirmed Aetna's position that even if "there was no wrongdoing on the part of Wabash" Aetna is entitled to its so-called overpayment demand because its Plans "do not cover the device [Wabash] provided and is entitled to recover payments made pursuant to the overpayment recovery statute without regard to fault." In doing so, Ms. Tancredi again concedes that the entirety of Aetna's dispute with Wabash is over coverage.

26.     On or about January 27, 2011, after months of fruitless discussions between the parties relative to settlement and/or alternative dispute resolution, Ms. Tancredi sent another letter to Ms. Smith, this time addressing Wabash's attempts to invoke the disclosure requirements and appellate procedures mandated by regulations promulgated by the Department of Labor under ERISA. Specifically, Wabash had attempted to submit disclosure and appeal requests relative to not only each and every one of the claims being retroactive denied by Aetna and/or Ms. Tancredi on behalf of Aetna, but also the mounting backlog of claims that had been denied as part of Pre-Payment Review, as imposed by Aetna and/or Ms. Tancredi on behalf of Aetna. In response to these attempts to appeal the Adverse Benefit Determinations in issue, Ms. Tancredi communicated Aetna's position that: (1) Aetna's overpayment demand does not constitute adverse benefit determinations of the underlying claims for which recoupment was being sought and therefore does not trigger the application of any of ERISA's procedural due process requirements; and (2) Wabash's "bulk" appeals of those claims denied as part and parcel of Pre-Payment Review would be ignored for a variety so-called deficiencies, each of which was palpably absurd, particularly in light of the number of claims being denied by Aetna. Ms. Tancredi also sought to distance herself from the Pre-Payment Review process imposed upon Tri3 by disclaiming any representation of Aetna with respect to these claims, despite having been the instrumentality of imposing Pre-Payment Review in the first place. Finally, Ms. Tancredi's 1/27/11 letter accused Tri3 of "bad faith" and of attempting to "circumvent" Pre-Payment Review by submitting claims by and through its other wholly-owned subsidiary Orthoflex. As such, Ms. Tancredi and/or Aetna imposed Pre-Payment Review on Orthoflex.

27.     On February 7, 2011, after having been informed that Ms. Smith was longer representing Tri3 or its subsidiaries, Ms. Tancredi sent a letter to Orthoflex directly, now demanding an additional refund of $102,570.76 for claims submitted to Aetna by Orthoflex for

both the Game Ready® and NanoTherm™ devices that Aetna's Plans "do not cover." Ms. Tancredi also accused Tri3 of attempting to circumvent its Pre-Payment Review of Wabash by submitting claims through Orthoflex, and demanded that Tri3 "cease all billings" to Aetna Orthoflex for both the Game Ready® and NanoTherm™ devices. Notably, Ms. Tancredi offered no review or appeal process to Orthoflex other than a settlement.

28. On March 2, 2011, Ms. Tancredi sent a letter to both Orthoflex and Wabash reiterating Aetna's overpayment demands of $103,570.76 and $487,145, respectively. Ms. Tancredi again set forth Aetna's contention that it was entitled to reimbursement of these previously paid benefits under "state insurance law permitting payors to recover payments for non-covered treatments, without regard to misconduct on the part of the submitting vendor." Once again, Ms. Tancredi made no mention of any formal review or appeal process available to Tri3 or the Aetna Insureds on whose behalf the claims were paid.

29. Despite Ms. Tancredi's continued pursuit of the above-described "overpayments" from Tri3 and its subsidiaries, Tri3 received various correspondences from Aetna specifically disclaiming any pursuit of a refund on the underlying claims. For example, on February 3, 4, and 7 of 2011, in response to Wabash's appeals of the Adverse Benefit Determinations underlying Aetna's so-called overpayment demand, Aetna sent letters to Tri3 indicating that Aetna had no record of any overpayment request for devices dispensed to a number of Aetna Insureds. So while Ms. Tancredi continued to pursue these overpayments and explicitly denied the existence of any ERISA rights with respect to the underlying claims, Aetna's own internal claim appeal departments processed appeals and claimed no such denials were even being made.

30. In all, despite Ms. Tancredi's baseless and often incendiary accusations, Aetna had not overpaid Tri3 and, further, had no valid basis for any of its decisions to seek restitution for the alleged overpayments. Moreover, Aetna violated ERISA by issuing revised benefit

determinations for literally hundreds of claims without providing the necessary disclosures relating to those decisions or an avenue through which those denials could be appealed.

31.     Although Aetna was obligated to do so, with regard to each of its revised benefit determinations cited in Ms. Tancredi's various letters, Aetna failed to provide either Tri3 or its patients a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder). Among other things, Aetna denied claims in a manner that was inconsistent with or unauthorized by the terms of its Insureds' Plans, as well as by failing to disclose the basis for its determinations, its methodology and other critical information relating to its benefit denials, including the right to appeal its revised claims denials.

32.     ERISA and its implementing regulations set forth standards for claim procedures, appeals, and notice to Insureds. By engaging in the conduct described herein, including using improper, invalid, and undisclosed policies relating to DME, issuing revised benefit denials without proper explanations or disclosure of administrative appeal or grievance procedures, making baseless threats regarding overpayments and violations of the so-called "Medicare False Claims Act," and causing other systematic benefit reductions without disclosure or authority under the Plans, Aetna violated ERISA, its regulations, and federal common law.

33.     As a result, Aetna failed to provide a "full and fair review" under ERISA, failed to provide reasonable claims procedures, and failed to make necessary disclosures to its Insureds and Tri3, pursuant to its lawfully-executed assignments from those Insureds.

34.     By virtue, *inter alia*, of Aetna's numerous procedural and substantive violations, any appeals by Plaintiff Tri3 and the Putative Class relating to Aetna's revised benefit determinations as described herein should be deemed exhausted or excused under ERISA and its underlying regulations, as provided in 29 C.F.R. § 2560.503 1(l).

35.     Notwithstanding the fact that Aetna improperly failed to disclose any administrative remedies, Tri3 made an exhaustive effort to appeal Aetna's various decisions, but to no avail. Plaintiff Tri3's failed appeals, as alleged herein and specifically rejected by Ms. Tancredi, further show the futility of exhausting appeals to Aetna. Exhaustion of internal appeals under ERISA should, therefore, be deemed to be futile.

36.     Aside from its procedural infirmities, Aetna's revised benefit determinations as set forth in Ms. Tancredi's various letters are invalid, arbitrary, and capricious under ERISA, and should be reversed, including its imposition of the unnecessary and burdensome requirement that Tri3 and its subsidiaries be subjected to Pre-Payment Review. This is solely designed to intimidate Tri3, to coerce a settlement, and to discourage it from submitting further claims to Aetna, without any valid basis under its Plans, in violation of ERISA.

37.     Aetna failed to comply with ERISA requirements in seeking to compel Tri3 to pay back benefits it previously been paid for providing supplies to Aetna Insureds. Among other things, Aetna did not: (1) notify the affected Aetna Insureds that Adverse Benefit Determinations had been made; (2) provide a colorable basis upon which its so-called overpayment demand was being based to either the affected Aetna Insureds or to Tri3; (3) provide a sufficiently specific basis upon which its Pre-Payment Review denials were being based to either the affected Aetna Insureds or to Tri3; (4) make available SPDs or other explanatory Plan documents to either the affected Aetna Insureds or to Tri3 relative to either its so-called overpayment demand or its Pre-Payment Review denials; and (5) offer an option to pursue an internal appeal or some other "full and fair review" of either those claims denied as part of its so-called overpayment demand or those claims denied as part of Pre-Payment Review.

38.     Through this action, Tri3 seeks to exercise its rights under ERISA, pursuant to assignments it has received from the patients whose claims are in issue, to: (1) seek restoration of

the benefits unilaterally withheld from it by Aetna in violation of ERISA; and (2) preclude Aetna from seeking to enforce its repayment demands without first complying with ERISA.

## ERISA VIOLATIONS BY AETNA

39.     Due to the role Aetna played in administering the Plans that provided the insurance benefits to the patients whose claims were subsequently determined to be overpaid, including making coverage and benefit decisions and deciding appeals, it acted as a fiduciary under ERISA. Under ERISA, Aetna cannot deny coverage for such services unless the applicable Plan expressly includes an exclusion specifying that such services are not covered benefits.

40.     Under ERISA, Aetna is required, among other things, to comply with the terms and conditions of its health care plans; to afford its Insureds or its providers an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements; and to make appropriate and non-misleading disclosures to its Insureds or its providers. Such disclosures include accurately setting forth plan terms; explaining the specific reasons why a claim is denied and the internal rules and evidence that underlie such determinations; disclosing the basis for its interpretation of plan terms; and providing appropriate data and documentation.

41.     In offering and administering its health care plans, Aetna further assumes the role of "Plan Administrator," as that term is defined under ERISA, in that its interprets and applies the plan terms, make all coverage decisions, and provides for payment to Insureds and/or their providers when benefits have been legally assigned. As the acting Plan Administrator, Aetna also assumes various obligations specified under ERISA. These obligations include providing its members with a Summary Plan Description ("SPD"), a document designed to describe in layperson's language the material terms, conditions, and limitations of the health care plan. The full details of the plan, which are summarized in the SPD, are contained in the Evidence of Coverage ("EOC") that governs each member's health care plan.

42.     Aetna is also obligated under ERISA to make its coverage determinations in a manner consistent with the disclosures contained in the SPD. To the extent there is a disparity or conflict between the SPD and the EOC, the SPD governs, so long as the member benefits from the application of the SPD. If the employer, rather than Aetna, is deemed to be the Plan Administrator, Aetna remains responsible for ensuring that the SPD complies with the law under its duties as a co-fiduciary as provided in ERISA, 29 U.S.C. § 1105, even if the employer prepares or disseminates the SPD.

43.     Aetna violated ERISA and breached its fiduciary duties by failing to disclose the reimbursement rules it used to reduce members' benefits, by making retroactive benefit claim denials without proper disclosure or following required procedures by improperly recouping benefits or suing for repayment of benefits that were rightfully paid to Plaintiffs and by failing to fulfill its obligations of good faith, due care and loyalty.

44.     Aetna's recoupment policies as applied to Providers clearly constitute "adverse benefit determinations" under ERISA. 29 C.F.R. § 2560.503-1(m)(4). The recoupments are based on Aetna's determination that the services at issue were not "covered," and any attempted or forced recoupment or withholding of authorized benefits, directly or indirectly, constitutes a "reduction" in benefits or "a failure to provide or make payments (in whole or in part) for a benefit," thereby satisfying the requirement for an adverse benefit determination.

45.     ERISA further establishes what steps must be followed once an "adverse benefit determination" is reached, including the following:

> [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set forth, in a manner calculated to be understood by the claimant – (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A

description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review . . . (29 CFR 2560.503-1(g)).

46.     In addition, ERISA requires that each claimant be given "a reasonable opportunity to appeal an adverse benefit determination" and to receive a "full and fair review of the claim," (29 CFR 2560.503-1(h)(1)), all within clear and explicit timing requirements.

47.     Aetna utterly failed and continues to fail to comply with any of the ERISA requirements. After making benefit determinations, pursuant to which it found that the specific health care services and/or supplies at issue were Covered Benefits of its health care plans and subsequently paid benefits to the Plaintiff and members of the Putative Class, Aetna reversed its coverage decisions. Aetna subsequently informed Plaintiff and members of the Putative Class that it had determined that those same services were no longer deemed to be Covered Services and either demanded immediate repayment, coerced Provider into making said repayments, or unilaterally withheld benefit payments on other valid, unrelated claims.

48.     Aetna's actions represent after-the-fact adverse benefit determinations under ERISA that would have the effect of creating new liabilities for the members to their treating providers. Yet, Aetna failed to sufficiently inform the Aetna Insureds, the Plaintiff, or members of the Putative Class of its actions, including by failing to provide necessary disclosures or documentation required under ERISA either to the members or the Providers.

49.     Because of Aetna's failure to comply with the steps required under ERISA to pursue an adverse benefit determination, its actions in demanding recoupment are invalid and unenforceable, and its coverage determinations should be deemed to be arbitrary and capricious.

50.     Even were Aetna to have complied with its procedural obligations under ERISA, it has no legal right to recoup or pursue repayment of such funds paid to Plaintiff, based on

retrospective reversals of prior benefit determinations. Each recoupment sought or taken by Aetna is a claim for restitution under ERISA. Yet, ERISA does not permit restitution unless the assets at issue are easily identified and separate from other assets, which these are not. Plaintiff obtained the funds in good faith and expended them or otherwise acted based on the assumption that such payments were proper. As there is no dispute that the DME in issue was provided by the Plaintiff, and that they billed and received payment for these services in good faith, ERISA does not permit restitution, and equity demands that Plaintiff be entitled to keep such payments. Aetna should therefore be estopped from seeking recoupment or retaining any funds that were paid pursuant to its demands, or should otherwise be found to have waived its ability to collect.

## CLASS DEFINITIONS

51.     Plaintiff brings this action on its own behalf and on behalf of a "Provider ERISA Class," defined as:

> All health care providers who, from six years prior to the filing date of this action to the class certification preliminary order date ("Provider ERISA Class Period"), provided health care services to patients insured under health care plans governed by ERISA and insured or administered by Aetna and who, after having received payments from Aetna, were subjected to retroactive requests for repayment of all or a portion of such payments or had subsequent payments withheld as an offset against the amount allegedly owed.

52.     Plaintiff brings claims against Aetna on its own behalf and on behalf of the Provider ERISA Class: (1) to enjoin Aetna from continuing to compel return of prior payments of plan benefits; (2) to order Aetna to return to all Class members all funds, plus interest, that Aetna have withheld to offset the amounts demanded or that have been paid by Class members to Aetna in response to such demands; and (3) to declare that any future efforts to recoup payments for errors or mistakes in prior payments must comply with the specific requirements under ERISA for Adverse Benefit Determinations.

## COMMON CLASS CLAIMS, ISSUES AND DEFENSES FOR THE CLASS

53. The following common class claims, issues and defenses for the Plaintiff and the Classes arise for the defined Class Periods:

(1) Whether ERISA applies to Aetna's efforts to compel repayment of previously paid benefits;

(2) Whether Aetna's recoupment of previously paid benefits based on offsets of new and unrelated claims violates ERISA;

(3) Whether ERISA requires each Class member to prove exhaustion or other legal reason excusing exhaustion;

(4) Whether Aetna's actions with regard to Class members result in a waiver of any objection to the validity of any assignments that may have been given by AETNA Insureds, or whether Aetna are otherwise estopped from asserting such an objection;

(5) Whether Class members may recover amounts repaid to Aetna or unpaid benefits and if so, the amounts they should receive;

(6) Whether Aetna's failure to provide accurate plan documents, EOCs, SPDs and other information upon request entitles Class members to any relief;

(7) Whether, in addition to unpaid benefits, interest should be added to the payment of unpaid benefits under ERISA;

(8) Whether Aetna's claims review procedures comply with ERISA; and

(9) The standard of review applicable to evaluate Aetna's benefit determinations under ERISA.

## ADDITIONAL CLASS ACTION ALLEGATIONS

54. The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of, at a minimum, hundreds if not thousands of health care providers. The precise number of members in the Class is within Aetna's custody and control. Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class. Common questions of law and fact exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including the class action claims, issues, and defenses listed above.

55.     Plaintiff's claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, Aetna have breached its statutory and contractual obligations to Plaintiff and the Classes through and by uniform patterns or practices as described above, including but not limited to its efforts to compel repayment of prior paid benefits and its forced recoupment through conversion or withholding of unrelated benefit payments.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and in the prosecution of ERISA claims and has no interests antagonistic to or in conflict with those of the Class. For these reasons, Plaintiff is an adequate class representative.

57.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Aetna.

58.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Classes is impracticable. Further, because the unpaid benefits denied Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Aetna maintain computerized claims information that enables them to calculate unpaid amounts resulting from its benefit determinations for Class members. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

## COUNT I

### CLAIM FOR BENEFITS UNDER GROUP PLANS GOVERNED BY ERISA
**(on behalf of Plaintiff and the ERISA Provider Class)**

59.     The allegations contained in this Complaint are realleged and incorporated by reference as if fully set forth therein. Count I is brought under 29 U.S.C. § 1132(a)(1)(B).

60.     Aetna must pay benefits to Aetna Insureds, or to its providers pursuant to assignments, that are insured, funded or administered by Aetna pursuant to the terms of its ERISA plans.

61.     To the extent Aetna have determined that charges submitted for reimbursement on behalf of Plaintiff and the members of the Provider ERISA Class are no longer Covered Services under its health care plans, or were otherwise overpaid, such a finding is an "adverse benefit determination" under ERISA.

62.     Aetna sought to compel Plaintiff and the members of the Provider ERISA Class to repay previously paid benefits without complying with terms and conditions required by ERISA for dealing with adverse benefit determinations.

63.     Aetna violated its legal obligations under ERISA and federal common law each time it denied benefits as detailed herein, including through its correspondence demanding repayment of benefits previously paid, without complying with ERISA's requirements for dealing with adverse benefit determinations.

64.     The lack of disclosure by Aetna to Plaintiff and the members of the Class relating to adverse benefit determinations, as required under ERISA, violated its legal obligations.

65.     Due to the failure of Aetna to comply with ERISA in pursuing recoupment efforts, it is estopped from pursuing such efforts and, further, is required to repay any members of the Provider ERISA Class whose benefits have been unilaterally withheld by Aetna in order to

apply them to sums Aetna demanded be repaid.

66.     ERISA precludes the recoupment efforts of Aetna, as they do not satisfy the requirements for equitable restitution.

67.     Due to failure of Aetna to comply with ERISA in making the above-detailed adverse benefit determinations, it is estopped from making such findings and precluded from denying coverage without complying with ERISA.

68.     Plaintiff, on its own behalf and on behalf of the members of the Classes, seeks unpaid benefits, interest back to the date its claims were originally submitted to Aetna, withdrawal of all claims for rescission or other relief against members of the ERISA Provider Class, and repayment of any amounts paid by or withheld from members of the ERISA Provider Class in response to any such letters or demands. Plaintiff further seeks appropriate declaratory and injunctive relief to enjoin Aetna from pursuing its efforts to coerce recoupment or otherwise compel payment and to order Aetna to return any funds it has received or withheld from Plaintiff and members of the ERISA Provider Class as a result of its recoupment efforts, and disgorge profits it has earned through improper benefit denials. In addition, Plaintiff requests attorneys' fees, costs, prejudgment interest and other appropriate relief against Aetna.

## COUNT II

### FAILURE TO PROVIDE FULL AND FAIR REVIEW AS REQUIRED BY ERISA
**(on behalf of Plaintiff and the ERISA Provider Class)**

69.     The allegations contained in this Complaint are realleged and incorporated by reference as if fully set forth herein.

70.     Aetna functioned and continues to function as the "plan administrator" within the meaning of such term under ERISA. During the Class Period, Aetna Insureds or its authorized representatives were entitled to receive a "full and fair review" of all claims denied by Aetna,

and entitled to assert a claim under 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements.

71.     Although Aetna were obligated to do so, they failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for Plaintiff and the Class by making claims denials that are inconsistent with or unauthorized by the terms of Aetna Insureds' EOCs and SPDs, as well as by failing to disclose its methodology and other critical information relating to such claims denials.

72.     By engaging in the conduct described herein, including withholding payments for properly submitted claims to apply toward so-called overpayments, and for effecting other systematic benefit reductions without disclosure or authority under the Aetna Plans, Aetna failed to comply with ERISA, its regulations and federal common law.

73.     As a result Aetna failed to provide a "full and fair review," failed to provide reasonable claims procedures, and failed to make necessary disclosures to its Insureds.

74.     Appeals of Plaintiff and members of the ERISA Provider Class should be deemed exhausted or excused by virtue, *inter alia*, of Aetna's numerous procedural and substantive violations.

75.     The failure of Aetna to offer a means to appeal its retroactive adverse benefit determinations, leading to its repayment demands, excuses any failure by Plaintiff or other Class members to exhaust, or otherwise shows the futility of exhausting appeals to Aetna.

76.     During the Class Period, Plaintiff and the members of the ERISA Provider Class have been harmed by the failure of Aetna to provide a "full and fair review" of appeals under 29 U.S.C. § 1133, and by its failure to disclose relevant information in violation of ERISA and the federal common law. Plaintiff and the members of the ERISA Provider Class are also entitled to injunctive and declaratory relief to remedy continuing violation of these provisions by Aetna.

Plaintiffs further seek appropriate equitable relief under Section 1132(a)(3) to compel Defendants to return any funds that have been improperly received by them or recouped from Class Members due to repayment demands issued in violation of ERISA, so as to remedy losses suffered by Class Members and to address Defendants' unjust enrichment arising from their misconduct as alleged herein.

**WHEREFORE**, Plaintiff demands judgment in its favor against Aetna as follows:

A.      Certifying the ERISA Provider Class, as set forth in this Complaint, and appointing Plaintiff as Class representative for the ERISA Provider Class.

B.      Declaring that Aetna have breached the terms of its EOCs and SPDs and awarding unpaid benefits to Plaintiff and the members of the ERISA Provider Class, as well as awarding injunctive and declaratory relief to prevent the continuing actions of Aetna as detailed herein that are undisclosed and unauthorized by EOCs and SPDs;

C.      Declaring that Aetna failed to provide a "full and fair review" to Plaintiff and ERISA Provider Class members under 29 U.S.C. § 1133, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its regulations;

D.      Declaring that Aetna violated its disclosure and related obligations under ERISA and federal common law, for which Plaintiff and ERISA Provider Class members are entitled to injunctive, declaratory and other equitable relief;

E.      Declaring that Aetna violated federal claims procedures, and awarding declaratory and injunctive relief to remedy such violations;

F.      Ordering Aetna to recalculate and issue unpaid benefits to providers that were underpaid as a result of the actions by Aetna as detailed herein, with interest, or to repay Plaintiff and other ERISA Provider Class members for the amounts they have repaid to Aetna due to its repayment demands;

G.    Enjoining all Aetna from continuing to pursue its recoupment efforts as detailed

herein, and ordering them to pay proper benefits in the form of a return of any sums previously

paid by or withheld from providers or AETNA Insureds in response to its recoupment efforts;

H.    Awarding Plaintiff disbursements and expenses of this action, including

reasonable counsel fees, in amounts to be determined by the Court;

I.    Awarding interest from the date of initial benefit reductions for Plaintiff and

members of the ERISA Provider Class for all improperly billed amounts; and

J.    Granting such other and further relief as is just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated:  May 16, 2011

Respectfully submitted,

/s/ Leigh Handelman Smollar
Patrick V. Dahlstrom
Leigh Handelman Smollar
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
312.377.1181
312.377.1184 (fax)

D. Brian Hufford
Robert J. Axelrod
Susan J. Weiswasser
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
100 Park Avenue
New York, New York 10017
212.661.1100
212.661.1373 (fax)

John W. Leardi
Vincent N. Buttaci
Paul D. Werner
BUTTACI & LEARDI, LLC

- 26 -

103 Carnegie Center, Suite 101
Princeton, New Jersey 08540
609.799.5150
609.799.5180 (fax)

*Counsel for Plaintiff*
 *and the Putative ERISA Provider Class*